UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

                              Case No. 8:19-cr-537-T-33AEP

vs.

JOSE CARDENAS VERGARA

## SENTENCING MEMORANDUM

Defendant, Mr. Vergara, by counsel Cynthia J. Hernandez, files the following Sentencing Memorandum setting out the factors that the court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

## Legal Framework for Sentencing Analysis

By virtue of these directives and how they relate to Mr. Vergara, a sufficient sentence in compliance with § 3553(a)'s mandate is a term of incarceration of 108 months. This sentence is based upon an advisory guideline range of 210 months to 262 months. Mr. Vergara requests a variance to 108 months from an advisory range of 210-262 months.

Mr. Vergara also requests that the judgment and commitment order state that he was paroled into the United States, recommend that he placed at MCC

Coleman, Florida, participation in UNICOR job program, and be afforded educational opportunities in mechanics, electricity, English and Spanish.

## *Circumstances of the Offense*

Mr. Vergara, age 45, was born and raised in Bajo Baudo, Colombia. Mr. Vergara was able to complete third grade while in Colombia. Mr. Vergara cannot read and write well in Spanish but would like to improve. He also would love to learn how to read, write and speak English. *See* PSIR ¶ 52. Prior to his arrest, Mr. Vergara was residing with his uncle and three of his minor children. (PSIR ¶ 43).

Notably, Mr. Vergara had no equity interest in the drugs. He had a limited role in planning the criminal scheme and absolutely no role in the ultimate distribution of the cocaine. He had little knowledge of the scope of the broader conspiracy.

Mr. Vergara was later captured on the high seas by the United State Coast Guard and brought to United States on November 7, 2019. He debriefed immediately once he arrived to the United States with agents assigned to his case.

## *Guideline Calculations*

Mr. Vergara's Presentence Investigation Report (PSR) lists his base offense level as a 38, pursuant to U.S.S.G. §2D1.1(c)(1), for an offense involving an estimated 2,295 kilograms of cocaine. The PSR added 2 levels for use of a semi-

submersible vessel in the offense pursuant to U.S.S.G. §2D1.1(b)(3). PSR ¶ 21. The PSR subtracted 3 levels for acceptance of responsibility and a timely plea pursuant to U.S.S.G. § 3E1.1(a). PSR ¶¶ 28-29. The PSR thus found his total offense level to be a 37. PSR ¶ 30. Mr. Vergara is undoubtedly in Criminal History Category I. PSR ¶ 32. The PSR thus estimates his guideline range to be 210-262 months imprisonment.

Mr. Vergara has two (2) objections to the PSR calculations.

**SAFETY VALVE**

Mr. Vergara should receive a two-level reduction for safety valve. Mr. Vergara entered into a plea agreement with the government in the instant case and truthfully and successfully debriefed in accordance with U.S.S.G. 5C1.2 (5). Mr. Vergara does not have any prior criminal history and did not use violence, treats or carry a firearm. Mr. Vergara was hired as a courier in this case and it did not involve death or serious bodily injury. Based on the forgoing argument and legal authority, Mr. Vergara objections should be granted and he should receive a two-level reduction for safety valve.

## MINOR ROLE

Mr. Vergara should receive a two-level reduction for minor role. He was not a leader or organizer, and had no proprietary interest in the operation. Recently, the Eleventh Circuit addressed which probative facts must be evaluated to determine the defendant's role in the offense. In *United States of America v. Cruickshank*, No. 14-13754 (11th Cir. Sep. 20, 2016), the court provided numerous factors for the court to consider. The court stressed that the examples are "nota and exhaustive list nor is any one factor…more important than another," *Cruickshank,* No 14-13754 (11th Cir. Sep. 20, 2016 at 17). The determination of whether minor-role is applicable in each case "is highly fact-intensive and falls within the sound discretion of the court." *Id.* The Eleventh Circuit clarified that a defendant is still eligible to consideration for minor role if the defendant does not have a proprietary interest or "if he or she is substantially less culpable than the average participant in the criminal activity" *Cruickshank,* No 14-13754 (11th Cir. Sep. 20, 2016 at 22). The seminal Eleventh Circuit case dealing with the determination of a mitigating role reduction pursuant to U.S.S.G. 3B1.2 is *United States v. Rodriguez De Varon*, 175 F.3d 930 (11th Cir. 1999). In the *De Varon* case, the Eleventh Circuit established a two-part test for determining whether a defendant qualifies for a minor role reduction. *De Varon*, 175 F.3d at 934. As the Eleventh Circuit noted, [f]irst, and foremost, the district court must measure the defendant's role against

[his] relevant conduct, that is, the conduct for which [he] has been held accountable under U.S.S.G. 4

1B1.3. *Id*. The Eleventh Circuit further stated the second part of the test requires that where the record evidence is sufficient, the district court may also measure the defendant's conduct against that of other participants in the criminal scheme attributed to the defendant. *Id*.

The guideline involved in the issue of minor role is U.S.S.G. 3B1.2, the new amendment to it is a more inclusive guideline provision for individuals like Mr. Vergara. The purpose of the mitigating role adjustment is to ensure that a low-level participant in a conspiracy does not receive the same sentence as a high-level participant in a conspiracy. Otherwise, based on the fact that all of the defendants in a conspiracy are held accountable for the total quantity of drugs involved, non-similarly situated defendants would be receiving the same sentence despite the minor role that some of the defendants may have had. Since, Mr. Vergara is being held for an amount of cocaine that places him at the same offense level as the owners, and those charged with logistics, his role must be compared to all of the other participants of the group of individuals.

In the present case, the factors weigh in favor of Mr. Vergara minor role status. Factually, Mr. Vergara had no equity interest in the drugs. He had no role in planning the criminal scheme and absolutely no role in the ultimate distribution of

the cocaine. Other factors supporting Mr. Vergara minor role status include the fact that he did not recruit any other participants and he had little knowledge of the scope of the broader conspiracy. Distinctly, no one reported to him. Clearly under these facts, Mr. Vergara was less culpable than most of the participants. Specifically, he was less culpable than the loaders, the logistics people, the distributors, the purchaser of the cocaine, the seller of the cocaine or any other unindicted co-conspirators.

Based on the forgoing argument and legal authority, Mr. Vergara's objections should be granted and he should receive a two-level reduction for minor role. Such a result will be consistent with one of the main goals of the guidelines by insuring that he does not receive the same sentence as individuals that are more culpable than him, thus running astray of the guiding goal that similarly-situated defendants should be similarly punished.

> *Mr. Vergara's History and Characteristics of his Offense Suggest That a Sentence of 108 (Or Variance of 108 Months in the Alternative) Months Imprisonment Would be "Sufficient but No Greater Than Necessary" to Comply With the Purposes of Sentencing 18 U.S.C. §3553(a) of Just Punishment, Public Protection, and Deterrence.*

Although the guidelines are "the starting point and the initial benchmark" for determining the appropriate sentence, "[t]he Guidelines are not the only consideration" and the sentencing court must consider all of the 18 U.S.C. §3553(a) factors in crafting a sentence. *Gall v. United States*, 552 U.S. 38, 49-50

6

(2007). When considering the §3553(a) factors, the sentencing judge may give Cir. 2007). Judges "may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough v. United States,* 128 S.Ct. 558, 570 (2007).

Mr. Vergara's guideline range--without the substantial assistance motion--is low end 210 months; with the substantial assistance motion-low end is 135 months; and the statutory mandatory minimum is 120 months. A sentence of low end 108 months is appropriate and just according to the factors that must be examined under 18 U.S.C. § 3553(a). In light of the mitigating history and characteristics of Mr. Vergara, as well as the facts and circumstances surrounding the non-violent nature of his offense, a sentence of 108 months, to be followed by a 5-year term of supervised release, will be "sufficient but not greater than necessary" to accomplish all of the purposes of sentencing enumerated in 18 U.S.C. § 3553(a).

    a.   *A sentence of 108 months adequately reflects the seriousness of the offense.*

The quantity of cocaine in this case is undoubtedly great, and a serious prison sentence is required to answer for this crime and send Mr. Vergara and others a message of deterrence that is lasting and sobering. However, those goals are accomplished with a sentence of approximately 108 months. At 45, Mr.

Vergara has spent his most adult life working as a fisherman. For a man like this, his arrest and incarceration has already been the most devastating event of his life. A sentence of 108 months imprisonment is even more devastating for him than for someone in the United States with the same sentence.

Mr. Vergara is cut off from everything he knows, in a strange place where he understands no one and he knows no one. His isolation during incarceration will be more severe than that of an American citizen serving a similar sentence. Because of this cultural isolation, a sentence of 108 months is just punishment for this individual.

    b. *A sentence of 108 months will protect the public.*

Mr. Vergara does not require a longer sentence than 108 months to protect the public from any further crimes by him. There is ample evidence in this case that Mr. Vergara will **never again** return to this country after he completes his sentence and deportation. Mr. Vergara's entire world and system of support exists with his family in Ecuador.

The United States Office of Probation and Pretrial Services (OPPS) developed a risk assessment instrument for assessing an individual's risk and needs when placed on supervision after conviction. The Federal Post Conviction Risk Assessment (PCRA) is a 55 item quantifiable instrument that measures a person's

risk of recidivism across seven domains: criminal history, including arrests; education and employment; alcohol and drug problems; social networks; cognitions (antisocial attitudes); other (housing, finance, recreation; and responsivity factors (personal, cultural, and societal barriers to change). A risk score is determined by adding up the points for scored items, which then correspond to a risk of recidivism based on a past analysis of OPPS data.

Similarly, the Federal Judicial Center developed the Risk Prediction Index (RPI) after several years of study and testing in eleven districts, now used by U.S. Probation officers during their assessments of newly released offenders to "estimate the likelihood that an offender will be arrested or have supervision revoked during his or her term of supervision." U.S. Probation, *The Supervision of Federal Offenders, Monograph 109,* 111-10. (March 2007 Update). The RPI measures seven variables: (1) the offender's age; (2) the number of arrests before the instant offense; (3) employment status (4) history of illegal drug or alcohol abuse; (5) prior history of absconding from supervision; (6) whether the offender has a college degree; and (7) whether the offender was living with a spouse and/or children at the start of supervision. These variables are assigned value, which are totaled for a score, which can then be compared to other offenders for risk of recidivism.

When Mr. Vergara's circumstances are measured according to either index, the PCRA, or the RPI, he would most certainly score in an extremely low risk category for recidivism. From the RPI perspective, again, Mr. Vergara is not a young adult (45, low risk), steady employment, no history of absconding, and a stable family. Mr. Vergara statistically bears the hallmarks of someone with an extremely low risk of reoffending because of his age, lifetime employment, and marital status. Increased age bears a strong correlation with lower recidivism. According to Sentencing Commission data, "recidivism rates decline relatively consistently as age increases," from 35.5% under age 21 to 9.5 % over age 50. USSC, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 12 (May 2004). The Commission's studies demonstrate that stable employment in the year prior to arrest is associated with a lower risk of recidivism. *See Measuring Recidivism*, supra at 12. (Mr. Vergara has worked consistently and most recently as a shop owner) Commission studies show that recidivism rates are lower for defendants who are married. *See Measuring Recidivism,* supra at 11. Finally and most critically, Sentencing Commission studies show that minimal or no prior involvement with the criminal justice system is a powerful predictor of a reduced likelihood of recidivism. *See USSC, A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score,* at 15 (2005).

There is no evidence that Mr. Vergara poses any sort of danger to the public, and a wealth of evidence to suggest that he will never again return to the justice system. Increased imprisonment in this case is not necessary to establish deterrence. Evidence of the deterrent value of imprisonment is ambiguous at best, and not a sound basis upon which to sentence. *See* Paul J. Hofer & Mark H. Allenbaugh, *The Reason Behind the Rules; Finding and Using the Philosophy of the Federal Sentencing Guidelines,* 40 Am. Crim. L. Rev. 19, 61- 62 (2003). Moreover, the punishment Mr. Vergara has sustained already is so devastating to him because of his crime that this Court does not need to consider greater incarceration to accomplish adequate deterrence.

Finally, Mr. Vergara's arrest has caused a great deal of suffering to his family, and a sentence greater than 108 months will prove traumatic to them, as their economic situation is already precarious and they rely on him for their survival. The absence of his financial and paternal support for his three (3) children will do real damage to their lives. His absence and extended incarceration is destabilizing to everyone in his life.

Mr. Vergara acknowledges and accepts that he has committed a serious federal crime and understands the need for punishment. He submits, however, that

the nature and circumstances of his offense, and his personal history and characteristics, weigh in favor of a sentence of 108 months.

**WHEREFORE**, Mr. Vergara prays this Court will grant the relief requested herein and enter an order of 108 months incarceration.

Respectfully submitted,

By: *s/ Cynthia Hernandez*

CYNTHIA HERNANDEZ, ESQ.
Florida Bar No. 0010422
506 N Armenia Ave.
Tampa, Florida 33609
Phone: (813) 841-2933
Email: cjhernandezlaw@gmail.com
*Attorney for Defendant Vergara*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 12th day of May 2020, a true and correct copy of the foregoing was furnished by the CM/ECF system with the Clerk of the Court, which will send a notice of the electronic filing to Diego Novaes, Assistant United States Attorney, United States Attorney's Office at 400 North Tampa Street, Suite 3200, Tampa, Florida 33602.

By: *s/ Cynthia Hernandez*

Cynthia Hernandez, Esq.
Attorney for Defendant